**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr><td>DEBORAH M.</td><td>:<br>:<br>:</td><td></td></tr>
<tr><td>v.</td><td>:<br>:</td><td>NO. 25-CV-5983</td></tr>
<tr><td>FRANK BISIGNANO,<br>Commissioner of Social Security</td><td>:<br>:<br>:</td><td></td></tr>
</table>

**O P I N I O N**

SCOTT W. REID                                    DATE:  May 6, 2026
UNITED STATES MAGISTRATE JUDGE

Deborah M. has brought this action under 42 U.S.C. §405(g) to obtain review of the

decision of the Commissioner of Social Security denying her claim for Disability Insurance

Benefits ("DIB").  She has filed a Request for Review to which the Commissioner has

responded.  As explained below, I conclude that the Request for Review should be denied and

judgment granted in favor of the defendant.

I.      *Factual and Procedural Background*

Deborah M. was born on April 19, 1971.  Record at 172.  She completed high school.

Record at 192.  She worked in the past as a paralegal, and as a server for a caterer.  Record at

193.  On December 8, 2023, Deborah M. filed an application for DIB, alleging disability as of

December 30, 2022, on the basis of breast cancer; fibromyalgia; arthritis in the knees, hips,

hands, and back; pain in the feet; Carpal Tunnel syndrome bilaterally; high blood pressure; dry

eyes; "short term memory loss" and anxiety and depression.  Record at 172, 191.

Deborah M.'s application was denied on May 6, 2024.  Record at 59.  It was denied again

upon reconsideration on August 9, 2024.  Record at 69.  Deborah M. then sought review *de novo*

before an Administrative Law Judge ("ALJ").  Record at 95.

A hearing was held before an ALJ in this case on February 13, 2025.  Record at 34.  On February 25, 2025, however, the ALJ issued a written decision denying benefits.  Record at 17. On August 13, 2025, the Appeals Council denied Deborah M.'s request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner for Social Security. Record at 1.  Deborah M. then filed this action.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

2

Before going from the third to the fourth step, the Commissioner will assess a claimant's

residual functional capacity ("RFC") based on all the relevant medical and other evidence in the

case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any

limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Deborah M. suffered from the severe

impairments of "hypertension; fibromyalgia; breast cancer, left side s/p mastectomy; obesity;

degenerative disc disease; degenerative joint disease; and generalized osteoarthritis."  Record at

19.  She decided that Deborah M. suffered from other conditions, including depression and

anxiety, but that they were non-severe.  Record at 20.  She also determined that none of Deborah

M.'s impairments, and no combination of impairments, met or medically equaled a listed

impairment.  Record at 21.

The ALJ found that Deborah M. retained the RFC to engage in light work, but could walk

and/or stand for only four hours in an eight-hour workday, and sit for the remainder of the day,

with the following additional limitations:

[N]o overhead reaching with the left upper extremity, only frequent reaching in all other directions with the left upper extremity (non-dominant); occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally stoop, crouch, kneel and

3

crawl; avoid concentrated exposure to:  extreme cold, humidity, vibrations, driving vehicles, unprotected heights and moving machinery.

Record at 22.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Deborah M. could return to her prior work as a paralegal as she actually performed it, at a sedentary level.  Record at 27.  She also found that Deborah M. could perform work at an unskilled, light-exertional level, in such jobs as a marker, router, or order caller.  Record at 28. She decided, therefore, that Deborah M. was not disabled.  Record at 29.

In her Request for Review, Deborah M. argues that the ALJ's conclusion that her mental impairments were not severe was based upon internally contradictory findings at the second stage of the sequential review.  She also argues that the ALJ erred in failing to include any limitation in the RFC assessment related to the "brain fog" and other deficits in concentration from which she acknowledged Deborah M. to suffer.  Finally, she maintains that the ALJ erred in acknowledging her need for a cane, but neglecting to include it in the RFC assessment.

IV.    *Discussion*

    A.    *The Mental Impairments*

At stage two of the sequential evaluation, the ALJ evaluated Deborah M.'s limitations in four areas of mental functioning, as required by 20 C.F.R. §404.1520a.  The areas considered, known as the "paragraph B" criteria in reference to the description of mental impairments in the Listings, are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*.

As to Deborah M.'s ability to adapt or manage herself, the ALJ wrote:

In this area, the claimant has **mild** limitation. On an adult function report, the claimant endorsed difficulty performing activities of daily living and personal care due to physical pain; she stated she was not well and her ability to handle stress depended on the stressor. On mental status examinations, the claimant's insight and judgment were intact. Overall, the record reflects no more than **moderate** limitation in this area.

Record at 20-21. (Emphasis supplied, internal citations omitted). As Deborah M. points out, it is impossible to know from this whether the ALJ found her to be mildly or moderately limited in this area.

Deborah M. argues that the ALJ's error in this regard was material because it affected the RFC assessment: the ALJ went on to find that her mental conditions were not severe because she had "no more than 'mild' limitation in any of the functional areas." Record at 21. Further, a finding of moderate limitations in Deborah M.'s ability to adapt or manage herself would undermine the ALJ's conclusion that she could return to her prior work as a paralegal. She argues that the ALJ's decision "cannot be affirmed by guessing that one sentence was a typo or by supplying a rationale the ALJ did not give." Request for Review at 6.

Here, however, I agree with the Commissioner that no guesswork is required to conclude that the reference to "moderate" limitations was no more than an accidental misstatement. The ALJ wrote: "Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in **any** of the functional areas *and* the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." Record at 21. (Bold supplied, italics in original).

The ALJ then continued:

[T]he claimant's **mild** "paragraph B" limitations are so slight that they do not cause any measurable loss of function in the mental abilities to understand, remember or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures in a work

5

setting.  Thus the following residual functional capacity assessment does not reflect any limitation in mental abilities.

Record at 21.  (Emphasis supplied).

Finally, the ALJ supported the above conclusion by calling "persuasive" the opinions of the state agency psychological experts who, on initial review and reconsideration, found that Deborah M. had a mild limitation in the ability to adapt or manage herself.  Record at 21, citing Record at 63 (opinion of Erin Urbanowicz, Psy.D.) and 73 (opinion of Christine Wallace, Psy.D.).

None of the above is consistent with a finding of a "moderate" limitation in adapting or managing oneself.  All of it is consistent with the ALJ's earlier statement that Deborah M.'s limitation in that functional area was mild.  A case cited by Deborah M., *Blackston v. Berryhill*, Civ. A. No. 17-313, 2018 WL 1795422 at *2 (W.D. Pa. Apr. 16, 2018), is irrelevant.  There, the court ordered a remand on the basis that an ALJ's decision was unreviewable where the ALJ stated that there was only one reference in the record to the claimant suffering from hallucinations, but the court was able to identify 42 such references.

Here, on the contrary, the ALJ did not ignore evidence.  Instead, she supported her determination with multiple citations to substantial evidence, including the opinions of Drs. Urbanowicz and Wallace, as well as mental status examinations in treatment notes from the Fox Chase Cancer Center which described Deborah M. as anxious but fully oriented and with intact insight and judgment.  Record at, *e.g.*, 341, 344, 352, 363, 373.

B.        *"Brain Fog" and Concentration*

As above, the ALJ found that Deborah M. suffered from the severe impairment of

fibromyalgia, which can have as one of its features cognitive or memory problems referred to as

"brain fog" or "fibro fog."  *See DeJesus v. Kijakazi*, Civ. A. No. 20-6115, 2022 WL 1062914 at

*5, n. 9 (E.D. Pa. Apr. 8, 2022).  The ALJ recorded Deborah M.'s allegations of "brain fog and

not being able to pay attention" and "difficulty with completing tasks and concentration."

Record at 20.  She also wrote that Deborah M. testified that she "cannot work due to pain, brain

fog and an ability to concentrate."  Record at 23.  Deborah M. argues it was error for the ALJ to

"acknowledge" these symptoms and yet conclude that she had only mild "paragraph B findings."

Request for Review at 8.

However, the fact that the ALJ reported Deborah M.'s complaints of brain fog did not

mean that she was compelled to adopt those complaints uncritically.  Although Deborah M.

accuses the ALJ of taking an improper "acknowledge and then omit" approach, the ALJ only

acknowledged Deborah M.'s *allegations* of poor concentration, and not the existence of poor

concentration.  Indeed, after describing Deborah M.'s testimony, the ALJ explicitly found that

her statements concerning the intensity, persistence, and limiting effects of her symptoms were

not entirely consistent with the medical evidence and other evidence in the record.  Record at 23.

Further, although the ALJ did not go on to specifically discuss the claim of fibromyalgia-

related brain fog in her discussion of the evidence, she did consider it earlier in her decision,

when assessing the paragraph B criteria:

> The third functional area is concentrating, persisting or maintaining pace.  In this area,
> the claimant has mild limitation.  The claimant alleged brain fog and not being able to
> pay attention and had [*sic*] difficulty with completing tasks and concentration.  [Citing
> the Function Report at 218-225 of the Record].  On mental status examinations, the
> claimant's attention was either good or intact, and she had logical and organized thought
> processes.  [citing treatment notes from Fox Chase Cancer Center at pages 325-624 of the

Record and Thomas Jefferson University Hospital at 837-1061 of the Record]. The weight of the evidence is consistent with no more than mild restriction.

Record at 20.

The ALJ's broad citations to a 300-page exhibit and a 225-page exhibit could be more helpful. On review, however, the cited records largely support the ALJ's interpretation of the record, with numerous observations of normal mood, behavior, thought content, and judgment. Record at 717, 735, 750, 848, 864, 883, 886, 897, 1354, 1392, and 1412. A single note from January 17, 2024, described Deborah M. as positive for decreased concentration. Record at 708. However, a month later, a February 12, 2024, note called her "negative for … decreased concentration". Record at 847.

Thus, the ALJ's conclusion that Deborah M. was only mildly impaired in concentration is adequately supported. Even if it were not, there would be no basis for remand. Although the ALJ found that Deborah M. could return to her past work as a paralegal, she also set forth an alternate conclusion naming several unskilled jobs that Deborah M. could perform, which would accommodate a moderate impairment in concentration. Record at 28.

C.      *The Use of a Cane*

Similarly, Deborah M. argues that the ALJ contradicted herself in recognizing that she used a cane, but also writing, as part of her stage two assessment of Listings 1.15 (disorders of the skeletal spine) and 1.18 (abnormality of a major joint in any extremity), that "the record does not show a documented need for [an] assistive device." Record at 22.

Initially, the mere use of a one-point cane is irrelevant to both Listings 1.15 and 1.18, which require either a need for an assistive device requiring the use of two hands, or the need for an assistive device requiring the use of one hand *plus* an inability to use the second upper extremity. 20 C.F.R. Part 404, Appendix P, §1.15 and §1.18.

8

Leaving Listings 1.15 and 1.18 aside, the evidence of record would not have permitted the ALJ to find a medical need for the use of a cane.  The Agency has instructed ALJs that:  "to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-6p, 1996 WL 374185 at *7 (July 2, 1996).

The SSR 96-6p criteria are not met here.  The ALJ simply noted that, during a January, 2023, rheumatologist appointment, Deborah M. "endorsed right hip pain and was using a cane." Record at 24, *citing* Record at 305.  The fact that Deborah M. was noted to use a cane at one doctor visit is far from enough to meet the requirements of SSR 96-6p.  Indeed, Deborah M. revealed in her Disability Report that she was prescribed a cane immediately after her 2017 knee surgery.  Record at 224.  There is no medical documentation of the need for a cane in the record, much less establishing the need for a cane post-recovery.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE